## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MANUEL TIJERINO**                                    **CIVIL ACTION**

**VERSUS**                                             **NO: 21-907**

**ADMINISTRATORS OF**
**THE TULANE EDUCATIONAL FUND**          **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 28). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Manuel Tijerino began working for Defendant Administrators of the Tulane Educational Fund in August 2017 as an IT Manager. Defendant required Plaintiff to relocate from Iowa to Louisiana to begin his in-office employment. In 2018, Plaintiff's wife and children returned to Iowa to sell the couple's real estate and decided to remain there after Plaintiff's wife learned she was pregnant. In January 2019, Plaintiff requested permission from his supervisor to work remotely part time so that he could be with his wife in Iowa.

1

Plaintiff and his supervisor reached an agreement in which he was allowed to work remotely on certain pre-approved Thursdays and Fridays. On April 30, 2019—a month before his wife's due date—Plaintiff traveled back to Iowa and communicated to his supervisor his intent to begin working remotely full-time going forward. On May 6, 2019, Plaintiff was notified of his termination. Plaintiff alleges that Defendant failed to provide him notice of his right to Family Medical Leave Act ("FMLA") leave and terminated him in retaliation for using FMLA leave. Defendant has moved for summary judgment on these claims.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

2

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

### A. Violation of FMLA Notice Requirements

Plaintiff alleges that Defendant violated the FMLA by failing to inform him of his rights under the FMLA when he discussed his wife's pregnancy and his need to work remotely with his supervisor on January 14, 2019. Pursuant to 29 C.F.R. § 825.300(b)(1), when an employee requests FMLA leave, or "when

---

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee" of his FMLA eligibility. Failure to provide notice as required may constitute "interference with, restraint, or denial of the exercise of an employee's FMLA rights."[9]

Defendant argue that this claim is time-barred. An action under the FMLA must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought" unless the violation is willful.[10] Plaintiff alleges that Defendant failed to provide him with notice of his FMLA rights on January 14, 2019. This action was filed more than two years later on May 6, 2021. Further, Plaintiff has not made any attempt to submit evidence or argument that Defendant's failure to notify him of his FMLA rights was willful. Accordingly, this claim is time-barred.

## B. FMLA Retaliation

Next, Plaintiff alleges that Defendant terminated him, in part, in retaliation for using FMLA leave. He suggests that the Court should use a "mixed motive" analysis in considering his claim because his use of FMLA leave was "a" factor, not the sole factor, in Defendant's decision to terminate him. Indeed, "[t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination."[11]

> Within the mixed-motive framework, (1) the employee must make a *prima facie* case of discrimination; (2) the employer must

---

[9] 29 C.F.R. § 825.300; Calderone v. TARC, 640 Fed.Appx. 363, 365–66 (5th Cir. 2016).
[10] 29 U.S.C. § 2617.
[11] Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 333 (5th Cir. 2005).

articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus. The employer's final burden is effectively that of proving an affirmative defense.[12]

Even assuming that Plaintiff can establish a prima facie case of retaliation, this Court agrees with Defendant that he cannot show that its legitimate, non-discriminatory reason is pretext or that it was motivated by discrimination.

### i.   *Legitimate, Non-Discriminatory Reason*

Defendant submits two legitimate, non-discriminatory reasons for Plaintiff's termination. First, Defendant submits evidence that Plaintiff misused Defendant's corporate credit card and refused to repay the amount he spent on personal charges. Defendant presents evidence that in January 2019, Plaintiff used his corporate credit card as collateral for the rental of a U-Haul for personal use. The card was mistakenly charged $919.91 for the rental. Plaintiff then reported the improper charge to J.P Morgan, who issued a refund of the amount to the card. Thereafter, U-Haul recognized its mistake and also

---

[12] Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 333 (5th Cir. 2005). "As it stands, *Richardson* is the law of this circuit, which permits a mixed-motive instruction when there is evidence that both legitimate and illegitimate motives played a role in the challenged employment action." Stanton v. Jarvis Christian Coll., No. 20-40581, 2022 WL 738617, at *7 (5th Cir. Mar. 11, 2022).

issued a refund of the amount to the card. This resulted in a positive balance on the card that Plaintiff believed he was entitled to keep under federal consumer laws. Plaintiff proceeded to spend the "gift card" on personal purchases totaling $840.41.[13] However, after learning that U-Haul had corrected its error, J.P. Morgan withdrew its refund.

It is undisputed that on April 9, 2019, the Assistant Controller and Assistant Director of Defendant, Jason Catt, emailed Plaintiff about the personal charges on the card and advised him to reimburse Defendant in the amount of $840.41 by April 15, 2019. On April 24, 2019, Plaintiff's supervisor followed up with Plaintiff regarding his failure to submit the requested reimbursement. Plaintiff responded that he felt that Catt had interfered with "his chargeback"—apparently by directing J.P. Morgan to "undo it"—and that he therefore was "not paying him 1 cent."[14] Plaintiff admits that he never paid Defendant back for his personal charges. On April 25, 2019, Defendant's human resources department referred the situation to its internal audit department for a full review. On April 29, 2019, the internal audit department confirmed that Plaintiff had violated Defendant's corporate card policies, and the human resources department recommended to Plaintiff's supervisor by email that Plaintiff be terminated based on that finding. Defendant points out that the human resources department made this recommendation without any knowledge of Plaintiff's wife's pregnancy or his need for FMLA leave. His supervisor accepted this recommendation, and he was terminated on May 6, 2019.

---

[13] Doc 28-2 at 50.
[14] Doc. 28-2 at 53, 105.

In addition, Defendant submits evidence that Plaintiff was also terminated for failing to report to work. On April 30, 2019, Plaintiff sent an email informing his supervisor that he was returning to Iowa that day to assist his pregnant wife and that he would be working remotely going forward. He spent all day April 30th driving from Louisiana to Iowa and did not work. Plaintiff's job was an in-office job, and although he had received permission to work remotely on some Thursdays and Fridays during his wife's pregnancy, he had not received authorization to work remotely full-time. He also did not request to take April 30th off. Accordingly, Defendant argues that Plaintiff was terminated for failing to report to work and unilaterally deciding to work remotely full-time.

ii.    *Pretext*

Having established a legitimate non-discriminatory reason for Plaintiff's termination, the burden now shifts to Plaintiff to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination or that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination.[15] For his part, Plaintiff points to Defendant's allegedly inconsistent reasoning regarding his termination as evidence of pretext. Specifically, he argues that Defendant has given different reasons for his termination at different times, including job abandonment, failure to request leave, or violation of its work attendance policy. However, each of these reasons arise out of the same incident in which Plaintiff returned to Iowa and decided to work remotely full-time. The Court

---

[15] *Richardson*, 434 F.3d at 333; Lorentz v. Alcon Lab'ys, Inc., 535 F. App'x 319, 322 (5th Cir. 2013).

does not find the use of various phrases to describe Plaintiff's behavior to be inconsistent or suggestive of pretext.

Plaintiff also argues that Defendant cannot have fired him for his decision to return to Iowa and begin working remotely because he was entitled to take time off under the FMLA. However, there is no evidence that Plaintiff ever actually requested leave to assist his wife during her pregnancy.[16] Rather, he requested to work from home. The FMLA does not entitle Plaintiff to work remotely.[17]

Finally, Plaintiff suggests that his use of the corporate card was "reasonable" and that he intended to pay back the charges. In a declaration submitted in support of his opposition to this Motion, Plaintiff states that he "offered to pay back" Defendant "if U-Haul canceled the chargeback and there was a balance left on the card."[18] This declaration, however, contradicts the contemporaneous email, in which Plaintiff unequivocally stated that he did not intend to pay Defendant back. In his deposition, Plaintiff suggests that at some point after sending the email he verbally told his supervisor to take the amount out of his check. It appears that Defendant referred this request to payroll on the same day that it referred the situation to its internal audit department for full review.[19] However, Plaintiff does not explain how his last-minute about-face shows that Defendant's decision to terminate him for his misuse of the

---

[16] Plaintiff testified that he discussed taking leave after the baby was born with his supervisor. Doc. 28-2 at 35. In fact, the pair had discussions about his work plans after he returned from FMLA leave. *Id.*

[17] Bennett v. Girl Scouts of Ne. Texas, No. 4:09CV443, 2010 WL 723794, at *3 (E.D. Tex. Feb. 25, 2010).

[18] Doc. 35-1 at 4.

[19] Doc. 28-2.

corporate card was pretext for discrimination. Accordingly, this Court finds that Plaintiff has not created a material issue of fact regarding whether Defendant's reasons for his termination were pretext or motivated in part by his need for FMLA leave.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Motion is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 5th day of December, 2022.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

9